THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT L. REYNOLDS, Defendant-Appellant.

First District (2nd Division)   No. 84—1339

Opinion filed April 16, 1985.

James E. Gierach, of Gierach & Schussler, Ltd., of Oak Lawn, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Karen C. Wirth, and Peter D. Zaper, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

After negotiations with the State through his counsel, defendant pleaded guilty to charges of driving under the influence of alcohol and improper lane usage. He was placed on supervision for one year, referred to the Alcoholic Evaluation Program, and was fined $250 by Judge William J. O'Connell. Other charges were stricken with leave to reinstate on motion by the State and the hearing on a charge of failure to comply with the Illinois implied consent statute (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1) was continued for approximately

one year.

After a subsequent evidentiary hearing on March 1, 1984, Judge Edwin J. Richardson found that defendant was able but refused to submit to a breathalyzer test on the date of his arrest, and his driver's license was ordered suspended. On appeal, defendant contests the license suspension, contending that there was insufficient evidence to support the circuit court's finding that he refused to submit to a request to take a breathalyzer test, and that the implied consent statute is unconstitutional as applied to him.

At the implied consent hearing, a Sauk Village police officer testified that on the afternoon of January 1, 1983, he stopped defendant for speeding, passing another car in a well-marked no-passing zone, and weaving across the center line. When he asked defendant to produce his driver's license, he smelled a "strong odor of alcohol" on defendant's breath. Defendant admitted that he had "had a few drinks," and "needed support" to walk to the back of the car. Defendant then was advised both at the arrest scene and at the police station of the implied consent statute; specifically, he was requested to take a breathalyzer test and told of the consequences of refusing to submit to that test. Defendant refused to take that test at the arrest scene and at the police station. Four traffic citations were issued, and a report and sworn affidavit indicating defendant's refusal were prepared and signed at the station.

On cross-examination, the officer stated that while in the course of transporting him to the station, defendant told him he had "an asthma problem" and "was having problems breathing." Defendant said he "could not" take the test while in the squad car because he could not breathe and needed medical attention. Defendant told him that he had medication on his person and requested permission to use it so that he could breathe. The officer denied that permission. Defendant continued to request that he be allowed to use his medication; however, the officer did not permit him to do so until he arrived at the police station after a brief ride, even though defendant "was laboring in his breathing." The officer inspected the medication, a spray can that defendant used, and recorded its name on his report, "Medihaler-Iso[proterenel Sulfate]," which he was told was asthma medication. Sauk Village paramedics were called to the police station. The paramedics came after defendant had used his medication, and he then refused to be transported by or to take medical aid from the ambulance attendant. Later, after taking the medication at the station, he "was able to breathe much easier." The officer told the breathalyzer operator that he had permitted defendant to take his medication,

"so [that] he could make the determination to see if it was not substantial [sic] to take the breathalyzer."

On redirect examination, the officer testified that the second time he asked defendant to take the test, five or 10 minutes after he used his inhaler, the officer did not "notice anything unusual" about defendant's breathing. Defendant "indicated" thereafter that he didn't want to take the test.

Defendant testified at the hearing. He suffered from asthma all his life. The attacks were bad enough a number of times so as to require hospitalization. At the scene of his arrest, his asthma attack became "very severe" when he was handcuffed and put in the squad car. The medication referred to by the officer had been prescribed for his condition, and he carried it in his pocket. He repeatedly asked the officer to be allowed to use the medication, which was refused him until he got to the police station. On the way to the station the officer radioed ahead to have paramedics meet them there. He "couldn't breathe whatsoever" when he arrived at the station. He was in "very bad shape" and he "couldn't think." When he was requested again by the officer to take the breathalyzer test, he said he "can't breathe" or "blow in any pipe." He heard the officer and another officer saying they were not sure that they could administer the breathalyzer test because of the medication and the "conditions involved."

On cross-examination, he testified that after such an attack, it usually took "a day or two" before he could resume breathing normally. He had been rushed to the intensive care unit a number of times for asthma attacks. Although "a period of time" elapsed between his taking medication at the station and the second request by the officer that he take the breathalyzer test, he was still gasping for air. On redirect, he testified that at that time he "was unable to" blow into the tube, and was barely able to breathe. Stress is one of the elements which affect his asthmatic condition.

The circuit court found that defendant's breathing returned to normal after taking his medication and that he could have taken the breathalyzer test but refused.

Defendant asserts that the circuit court's finding that he was able but refused to take the breathalyzer test was against the manifest weight of the evidence. The record evidence here shows that defendant was experiencing an asthma attack during the course of his arrest. Both he and the arresting officer so testified. The State argues that defendant's refusal of medical attention from an ambulance attendant indicates that he recovered shortly after his arrest. In contraposition was defendant's evidence that he had suffered from

asthma all his life, had carried necessary medications with him and, through previous experience, knew what to do to restore his breathing. Evidence as to the seriousness of the attack and the extent to which it rendered defendant unable to take the test thus was in conflict and properly was to be determined by the trier of fact. Since implied consent hearings are to proceed in the same manner as other civil proceedings and the Supreme Court Rules on civil appeals (87 Ill. 2d R. 301 *et seq.*) are applicable (Ill. Rev. Stat. 1983, ch. 95½, par. 501.1(c); *People v. Malloy* (1979), 76 Ill. 2d 513, 519, 395 N.E.2d 381), this court cannot disturb the circuit court's findings unless they are contrary to the manifest weight of the evidence (*People v. Schuberth* (1983), 115 Ill. App. 3d 302, 304, 450 N.E.2d 459; *People v. Bafia* (1983), 112 Ill. App. 3d 710, 717-18, 445 N.E.2d 878); we hold they are not.

Defendant insists that under the evidence submitted, he clearly was "unable" to take the sobriety test and therefore did not "refuse" to take it within the meaning of the statute, citing *Burson v. Collier* (1970), 226 Ga. 427, 175 S.E.2d 660, and *State v. Rajala* (1975), 54 Ala. App. 502, 310 So. 2d 223. In *Burson*, defendant twice was unable to complete a breath test because he suffered from emphysema and in *Rajala*, the asthmatic and emphysematous defendant was unable to blow enough air into the breathalyzer to complete the test.

The facts in the instant case are otherwise. Here, after a trial upon the merits, the circuit court chose to believe evidence that defendant's breathing returned to normal and that he could have taken the test but refused. Defendant elected to stand upon his own testimony that it took "a day or two" before he could resume normal breathing, rather than submitting substantive medical evidence of his condition. The circuit court was faced with the problem of accepting the version of the arresting officer or that of defendant and relied upon the former. If there is any medical evidence which demonstrates that one who suffers from asthma cannot perform the breathalyzer test until "a day or two" after an attack, it should have been presented to the circuit court at trial, but was not. Had defendant thus shown his inability to take the test with such evidence, the circuit court would have been justified in finding him "unable" to do so. See, e.g., *People v. Schuberth* (1983), 115 Ill. App. 3d 302, 305, 450 N.E.2d 459. *Cf. Burson v. Collier* (1970), 226 Ga. 427, 175 S.E.2d 660 and *State v. Rajala* (1975), 54 Ala. App. 502, 310 So. 2d 223.

Also questioned by defendant is the accuracy of the breathalyzer test, which he asserts may have been compromised by his having inhaled medication. He maintains that the police could have just as eas-

ily and efficiently administered a blood or urine test that would not have exacerbated his medical condition. (See Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.1(a).) Of course, those tests might have been initiated by the paramedics who had been called to the police station by reason of the alleged severity of the attack and the selection of which remaining alternative tests should be given would not have been at defendant's instance (see *People v. Kiss* (1984), 122 Ill. App. 3d 1056, 462 N.E.2d 546), but would have remained the option of the State. Absent evidence that defendant's breathing returned to normal, the State's failure to initiate other tests could have become important to the disposition of this case; however, in view of our conclusion that the circuit court's findings were not against the manifest weight of the evidence, the availability of alternative tests is of no moment here.

For the same reasons set forth in the preceding paragraph, defendant's assertion that the implied consent law as applied to him violated his fourteenth amendment rights of due process and equal protection is unpersuasive. That argument is based upon the police officer's failure to arrange for testing alternatives to the breathalyzer because such other tests would not have further aggravated defendant's breathing. As above noted, because the circuit court had the right to believe under the evidence that defendant's breathing returned to normal and could have taken the breathalyzer but refused, there was no occasion for an alternative test to have been administered. Defendant did not ask for them and, under the record evidence, the authorities need not have offered them. We find no constitutional impediment to the implied consent statute as applied in this case.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN and BILANDIC, JJ., concur.